# IN THE COURT OF APPEALS OF IOWA

No. 22-1948
Filed February 8, 2023

**IN THE INTEREST OF C.G., N.G., T.G., P.R. and B.R.,**
**Minor Children,**

**D.J-A., Mother,**
      **Appellant.**

_____

Appeal from the Iowa District Court for Linn County, Carrie K. Bryner, District Associate Judge.

The mother appeals the termination of her parental rights. **AFFIRMED.**

Robert W. Davison, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Annette F. Martin, Cedar Rapids, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

The juvenile court terminated the mother's parental rights for five children: C.G., N.G., T.G., P.R., and B.R. The mother filed a bare-bones petition on appeal. Even generously reading the petition on appeal, we find no basis to disturb the juvenile court's ruling and affirm.

## I.      Background Facts and Proceedings

The Iowa Department of Health and Human Services (HHS) has a lengthy history of involvement with this family, with founded reports of abuse against the mother or the father[1] dating back to 2014. Most relevant to this appeal is the HHS investigation relating to domestic violence perpetrated between the father and the mother, in the presence of the children, throughout 2020. Police were called to the home for domestic violence on at least half a dozen occasions, some with reported injuries. There were multiple reports of alcohol and drug abuse inside the home, sometimes related to the domestic violence and sometimes independent of it. HHS also made a founded report that the mother slapped one of the children so hard that she left visible injuries.

During the HHS investigation, the mother generally made excuses for the father and minimized the domestic violence. In July 2020, the mother briefly asked the father to leave the home, but she soon changed her mind and invited him back

---

[1] All references to "the father" in this appeal refer to M.R., the biological father of P.R. and B.R. M.R.'s parental rights were also terminated, and he has not appealed. The juvenile court made findings about threats M.R. made toward various providers during the life of the case, as well as his lack of interest in maintaining any connection with the children. An HHS worker also testified that M.R. had a lengthy substance-abuse history, "primarily meth." C.G., N.G., and T.G. have a different biological father, not relevant to this appeal.

to "work things out." Less than two weeks later, police were called to the home due to reports of the mother and father fighting. By August, the mother again told HHS that the father would not be moving back into the home and agreed to a safety plan effectuating the move. At one point, the mother obtained a civil no-contact order against the father (who had by then left the state), but she allowed him to visit her and the children nonetheless. Some months after that, the mother bought the father a plane ticket back to Iowa. When the father arrived, the domestic violence almost immediately resumed, again fueled by alcohol. Throughout this time period, the mother was repeatedly dishonest with HHS about the status of her relationship with the father.

The mother has a significant history of substance abuse. She completed an outpatient treatment program in March 2021, but in April was arrested for operating while intoxicated and criminal mischief. She passed some drug testing around this time but missed approximately one-third of her testing appointments. Sweat patches between August 2021 and May 2022 tested positive for methamphetamine on one occasion and cocaine twice. The mother admitted some but not all of the drug use to HHS, generally made inconsistent statements, and denied all but one instance of cocaine use at trial. From September 2021 to January 2022, the mother had multiple negative drug tests, but she again missed about one-third of her testing appointments.

The mother also has a significant history of mental-health problems. In December 2020, she was diagnosed with adjustment disorder with mixed anxiety and depressed mood, as well as a moderate episode of recurrent major depressive disorder and anxiety. Although the mother participated in some mental-health

treatment, by November 2021 she was no longer taking medicine related to mental health or attending therapy. In December 2021, the mother was diagnosed with ADHD and the prescribed medication had a positive, albeit temporary, effect on her progress toward reunification. By the time of the mother's positive drug tests in 2022, she reported she was no longer interested in the prescribed medication and she stopped attending therapy.

The mother also has significant problems with judgment and inviting dangerous men into the home and potentially exposing the children to them. In addition to the substantial domestic-violence history with the father discussed above, the mother invited one paramour into her home that stole from her; dated another man who was in prison; allowed one of the children to view nude photos and sexual messages on her iPad; and engaged in a relationship with a coworker that concluded with the man stealing her vehicle and leaving bite marks on her face. According to HHS, at least one of these men "has an extensive criminal history of assault."

The family had a tumultuous participation with services, and the mother never progressed beyond semi-supervised visitation after the children were removed from the home. Although the mother occasionally made intermittent progress during the life of the case, her substance abuse and dishonesty caused repeat setbacks and raised serious doubts about her ability to care for the children. Even the children expressed concern about who would be there to "check on them" if they were required to stay overnight with the mother in the future.

Following a contested hearing, the guardian ad litem joined the State in requesting termination for all five children. The juvenile court followed that request, and this appeal follows.

## II. Standard of Review

We generally review an order to terminate parental rights de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Discussion

The termination related to C.G., T.G., N.G., and P.R. is supported by Iowa Code section 232.116(1)(f) (2022). We agree with the State that it is unclear from her petition exactly what the mother contests about the statutory elements. In any event, we agree with the juvenile court that all elements were met. These children were at least four years of age, they were adjudicated in need of assistance, they have been out of parental custody since August 2020 (well in excess of twelve months) with no trial periods at home, and there is clear and convincing evidence the children cannot be returned to the parents. *See* Iowa Code § 232.116(1)(f). As to the last element, we are most persuaded the children cannot be returned to the mother's care due to the mother's repeated drug use, dishonesty, failure to address her mental-health and substance-abuse problems through therapy or otherwise, and her repeated participation in domestic violence (including as an offender and enabler). *See id.* § 232.116(1)(f)(4). Under our case law, we presume that the numerous missed drug tests would have been positive for illegal substances. *See In re. R.A.*, No. 21-0746, 2021 WL 4891011, at *1 (Iowa Ct. App.

Oct. 20, 2021) (stating this proposition and collecting cases). We also agree with the juvenile court that the mother lacks any significant insight into how her behavior, relationships, and conduct have traumatized and endangered the children, and it appears she has taken limited steps to rectify these concerns even over the lengthy duration of the child-in-need-of-assistance and termination proceedings. This offers good reason to think the mother's past failure to provide adequate care will continue in the future. *See In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020) ("[T]he parents' past performance . . . may indicate the quality of care the parent is capable of providing in the future." (citation omitted)).

The termination related to B.R. is supported by Iowa Code section 232.116(1)(h). The argument related to B.R. in the mother's petition on appeal is three sentences and a sentence fragment, none of which make a coherent legal argument. To the extent the mother challenges termination for B.R., we agree with the juvenile court that all of the statutory elements were met. At the relevant time, B.R. was three or younger, he was adjudicated as a child in need of assistance, he was removed from the mother's physical care in August 2020 (well in excess of six months before termination) with no trial periods at home, and there is clear and convincing evidence he cannot be returned to the parents. *See* Iowa Code § 232.116(1)(h). We are persuaded by largely the same evidence that supports termination for the other children, including the volatile home life supplied by the mother and the mother's failure to adequately address her ongoing mental-health or substance-abuse problems.

The mother also argues termination is not in the children's best interests. *See id.* § 232.116(2). Again, the mother's repeated drug use, dishonesty, failure

to address her mental health and substance abuse, and domestic violence convince us termination is in the children's best interests. These children deserve permanency. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child.").

Finally, a block quote and related language in the mother's petition could be construed as a request to invoke the permissive bond exception at Iowa Code section 232.116(3)(c). We assume without deciding that this issue was properly preserved and adequately presented. The mother bears the burden of proof. *In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). While it is true that the mother expressed the subjective belief that she has a strong bond with her children, there is little support for that claim in the record. The more credible evidence is that the domestic violence and the mother's struggles with mental health and substance abuse have undermined if not eliminated any meaningful bond. We also credit the HHS worker's testimony that there is a significant risk further contact with the mother will only serve to re-traumatize the children. As a result, we find the mother failed to carry her burden, decline to apply the permissive bond exception, and affirm the termination.

**AFFIRMED.**